IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. _:__-cv-_____-_


| | |
|---|---|
| JOSE CRUZ MARTINEZ-MORALES, MARGARITO DE LA CRUZ-NAVA, CUAUHTEMOC FLORENCIO-GUTIERREZ, MARISOL FLORENCIO-GUTIERREZ, AGUSTIN FLORENCIO-SANCHEZ, JEIDY FLORES-ARRIAGA, ROSA IRMA GOMEZ-HERNANDEZ, IVAN OSWALDO MEZA-GARCIA, FELICIANO NAVARRETE-FLORES, PEDRO PROCOPIO-DIAZ, JOSE ROMERO-PATRICIO, BENIN BETUEL VARGAS-ESPIRITU, and SERGIO VILLALVA-GATICA, *on behalf of themselves and other similarly situated persons*, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | )       <u>COMPLAINT</u> ) |
| VALENTINO LOPEZ, JR. *aka and/or d/b/a* VALENTINO LOPEZ AND VALENTINO LOPEZ GOMEZ, GILBERTO LOPEZ, HANNAH FORREST FARMS, LLC *aka and/or d/b/a* HANNAH FORREST BLUEBERRIES, LLC, and RONNIE CARTER FARMS, INC., | ) ) ) ) ) ) ) ) |
| Defendants. | ) ) ) |

I. <u>PRELIMINARY STATEMENT</u>

1.     This is an action by thirteen (13) former H-2A temporary agricultural workers and employees of Defendants under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq., the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. §§ 95-25.1 et seq., the Trafficking Victims Protection Reauthorization Act of 2005 ("TVPRA"), 18 U.S.C. §§ 1581 et seq., and the common law of

1

contracts. The Plaintiffs are former employees of the above-captioned agricultural corporate enterprises, farm labor contractors ("FLCs" or "FLC"), and individuals (hereinafter referred to collectively as "Defendants") who jointly and severally employed Plaintiffs in 2020 in or around Sampson County, North Carolina, to perform agricultural and related work for Defendants.

2. Beginning in 2016, and through at least 2021, and specifically in 2020, the FLC defendants and/or individuals entered into fixed-site operation work contracts or agreements with various North Carolina farms and enterprises to provide H-2A labor to those farms and enterprises to harvest the latter's crops. By using FLCS, the North Carolina farms and enterprises avoided incurring costs of direct H-2A program participation while still benefitting from the provision of H-2A labor to their farms and enterprises.

3. In 2020 the FLC defendants entered into fixed-site operation work contracts or agreements with various North Carolina farms and enterprises, including the above-captioned agricultural corporate enterprises, to provide H-2A labor to the above corporate Defendants and other farms and enterprises to harvest the latter's crops, whereby the corporate Defendants and other farms and enterprises avoided incurring costs of direct H-2A program participation.

2

4.  In 2020 the FLC defendants recruited foreign farmworkers in numerous states in Mexico and convinced many of those recruited workers to pay exorbitant, unlawful recruitment fees for the opportunity to work lawfully in the U.S. as H-2A workers.  The FLC defendants made fraudulent promises to the recruited workers about the wages they would earn and the terms and conditions of the contracted employment in the U.S. in order to persuade the workers to pay the recruitment fees.

5.  The FLC defendants' fraudulent recruitment scheme left Plaintiffs in stifling debt.  Plaintiffs incurred debt from both the unlawfully charged recruitment fees and the expenses FLC defendants required Plaintiffs to pay to travel from their homes in Mexico to North Carolina to work for them in North Carolina.  Defendants never reimbursed Plaintiffs for such expenses, in violation of the terms of the H-2A contract, H-2A regulations, and federal law.

6.  Once Plaintiffs had left their hometowns in Mexico, traveled thousands of miles, and arrived in North Carolina, the FLC defendants exploited Plaintiffs' indebtedness and coerced and/or compelled Plaintiffs, through force, threats, and various other means, to labor against their will on various berry farms in North Carolina for far less than the wages promised and, in at least some workweeks, for less than the minimum hourly wage rate.

3

7. In addition to the coercive means described in the preceding paragraph, Defendant Lopez Jr. sexually assaulted Plaintiff Gomez-Hernandez and subjected Plaintiff Gomez-Hernandez to sex trafficking, as defined by and in contravention of 18 U.S.C. § 1591.

8. Plaintiffs pursue claims against the Defendants for failure to pay the minimum wage required under the FLSA for Plaintiffs' work for Defendants; failure to pay Plaintiffs wages at least at the promised rate(s) as required by the NCWHA and their work contracts with Defendants; failure to pay all wages owed to Plaintiffs when due, as required by the FLSA, NCWHA, and work contracts between Plaintiffs and Defendants; liquidated damages under the FLSA and NCWHA; punitive damages under the TVPRA; and claims for other violations.

9. Plaintiffs bring claims on behalf of themselves and seek to represent all other similarly situated employees of Defendants who were paid less than the minimum wage required by the FLSA, in violation of the FLSA, through a collective action pursuant to 29 U.S.C. § 216(b).

10. Plaintiffs seek monetary, injunctive, and declaratory relief against Defendants under the FLSA, NCWHA, TVPRA, and the common law of contracts.

II. JURISDICTION

4

11. Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. §§ 1331 and 1337, 18 U.S.C. § 1595(a), 29 U.S.C. § 216(b), and 28 U.S.C. § 1367(a).

12. This Court has the power to grant declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

III. VENUE

13. Venue over this action lies in this Court pursuant to 28 U.S.C. § 1391(b) and 29 U.S.C. § 216(b). A substantial part of the events or omissions giving rise to Plaintiffs' causes of action occurred in one or more counties listed in 28 U.S.C. § 113(a).

IV. PLAINTIFFS

14. Plaintiffs Jose Cruz Martinez-Morales, Margarito De la Cruz-Nava, Cuauhtemoc Florencio-Gutierrez, Marisol Florencio-Gutierrez, Agustin Florencio-Sanchez, Jeidy Flores-Arriaga, Rosa Irma Gomez-Hernandez, Ivan Oswaldo Meza-Garcia, Feliciano Navarrete-Flores, Pedro Procopio-Diaz, Jose Romero-Patricio, Benin Betuel Vargas-Espiritu, and Sergio Villalva-Gatica (collectively "Plaintiffs") are citizens of Mexico who were admitted to the U.S. in 2020 on a temporary basis with H-2A visas issued pursuant to 8 U.S.C. §§ 1101(a)(15)(H)(ii)(a), 1184(c), and 1188(a)(1) (the "H-2A Program"), to perform agricultural labor in 2020 in or around Sampson County, North Carolina.

15. At all times relevant to this Complaint, Defendants employed Plaintiffs to perform agricultural and related work for

5

Defendants in or around Sampson County, North Carolina, within the meaning of 29 U.S.C. §§ 203(d) and 203(g), N.C. Gen. Stat. §§ 95-25.2(3), 95-25.2(5), and 95-25.2(18), and 20 C.F.R. §§ 655.103(b) and 655.1300(c), and jointly employed them within the meaning of 29 C.F.R. § 791.2.

16.    At all times relevant to this Complaint, Plaintiffs were engaged in commerce or in the production of goods for commerce, or were employed in an enterprise engaged in commerce or in the production of goods for interstate commerce, within the meaning of 29 U.S.C. § 203(s)(1)(A) of the FLSA.

V.    DEFENDANTS

17.    Defendant Hannah Forrest Farms, LLC, also known as and/or doing business as Hannah Forrest Blueberries, LLC (hereinafter "Hannah Forrest Farms"), is a corporation organized in 2016 under the laws of the state of North Carolina. Bobby Joe Long, 276 Highbush Lane, Rose Hill, North Carolina 28458, is its registered agent for service of process.

18.    At all times relevant to this Complaint, Defendant Hannah Forrest Farms was and is a corporation "engaged in commerce or in the production of goods for commerce" within the scope and meaning of the FLSA, 29 U.S.C. § 203(s)(1)(A).

19.    At all times relevant to this Complaint, Defendant Hannah Forrest Farms was and is an employer of H-2A workers, including Plaintiffs, as that term is defined in and by the H-2A regulations,

6

20 C.F.R. § 655.103(b), the FLSA, 29 U.S.C. § 203(d), and the NCWHA, N.C. Gen. Stat. § 95-25.2(5).

20. At all times relevant to this Complaint, Defendant Hannah Forrest Farms had the power and authority and/or exercised the power and authority to direct, control, and/or supervise the work performed by Plaintiffs and similarly situated employees for Defendant Hannah Forrest Farms on its farms.

21. At all times relevant to this Complaint, Defendant Hannah Forrest Farms owned and operated blueberry and/or blackberry farms in or near Rose Hill, North Carolina.

22. Defendant Ronnie Carter Farms, Inc. (hereinafter "Ronnie Carter Farms") is a corporation organized in 2002 under the laws of the state of North Carolina. Lucas L. Carter, 3461 Alpine Church Road, Harrells, North Carolina 28444, is its registered agent for service of process.

23. At all times relevant to this Complaint, Defendant Ronnie Carter Farms was and is a corporation "engaged in commerce or in the production of goods for commerce" within the scope and meaning of the FLSA, 29 U.S.C. § 203(s)(1)(A).

24. At all times relevant to this Complaint, Defendant Ronnie Carter Farms was and is an employer of H-2A workers, including Plaintiffs, as that term is defined in and by the H-2A regulations, 20 C.F.R. § 655.103(b), the FLSA, 29 U.S.C. § 203(d), and the NCWHA, N.C. Gen. Stat. § 95-25.2(5).

7

25. At all times relevant to this Complaint, Defendant Ronnie Carter Farms had the power and authority and/or exercised the power and authority to direct, control, and/or supervise the work performed by Plaintiffs and similarly situated employees for Defendant Ronnie Carter Farms on its farms.

26. At all times relevant to this Complaint, Defendant Ronnie Carter Farms owned and operated blueberry and/or blackberry farms in or near Harrells, North Carolina.

27. Defendant Valentino Lopez, Jr., also known as and/or doing business as Valentino Lopez and Valentino Lopez Gomez (hereinafter "Lopez Jr."), is and has been registered as a Farm Labor Contractor with the U.S. Department of Labor ("USDOL"), including but not limited to in the year 2020.

28. At all times relevant to this Complaint, Defendant Lopez Jr. operated as a Farm Labor Contractor ("FLC"), as defined by and in 29 U.S.C. § 1802(7), in that, for money or other valuable consideration paid or promised to be paid, he recruited, solicited, hired, furnished, and/or employed migrant agricultural workers, including Plaintiffs.

29. Defendant Lopez Jr.'s current FLC Certificate became valid on May 1, 2021, and it expires on April 30, 2023. That Certificate lists his address as 15835 Highway 210 E, Ivanhoe, North Carolina, in Bladen County.

8

30.     Upon information and belief, Defendant Lopez Jr.
presently resides at 117 S Pope Street in Atkinson, North Carolina,
in Pender County.

31.     Defendant Gilberto or "Beto" Lopez (hereinafter "Beto
Lopez") has been registered as an FLC with USDOL, including but
not limited to in the year 2020.

32.     Upon information and belief, Defendant Beto Lopez's most
recent FLC Certificate became valid on March 20, 2019, and it
expired on March 19, 2021.  That Certificate lists Defendant Beto
Lopez's address as 15835 Highway 210 E, Ivanhoe, North Carolina,
in Bladen County, the same address as listed for Defendant Lopez
Jr. on his current FLC Certificate.

33.     Upon information and belief, at all times relevant to
this Complaint, Defendant Beto Lopez has operated and continues to
operate as an FLC, as defined by and in 29 U.S.C. § 1802(7), in
that, for money or other valuable consideration paid or promised
to be paid, he recruited, solicited, hired, furnished, and/or
employed migrant agricultural workers, including Plaintiffs,
notwithstanding the expiration of his most recent FLC Certificate
on Mar. 19, 2021.

34.     In addition to operating as an FLC himself, Defendant
Beto Lopez is affiliated with Defendant Lopez Jr., and has shared
and/or co-employed H-2A workers with Defendant Lopez Jr., such
that at times in 2020 some if not all Plaintiffs worked some days

9

and/or hours harvesting berries under the supervision of Defendant Beto Lopez.

35. Upon information and belief, Defendant Beto Lopez presently resides at 679 Beattys Bridge Road in Atkinson, North Carolina, in Pender County.

36. At all times relevant to this Complaint, Defendant Beto Lopez was and is an employer of H-2A workers, including Plaintiffs, as that term is defined in and by the H-2A regulations, 20 C.F.R. § 655.103(b), the FLSA, 29 U.S.C. § 203(d), and the NCWHA, N.C. Gen. Stat. § 95-25.2(5).

37. At all times relevant to this Complaint, Defendants were joint and individual employers of the Plaintiffs within the meaning of the FLSA, 29 U.S.C. §§ 203(d) and (g), the NCWHA, N.C. Gen. Stat. §§ 95-25.2(3), and the H-2A regulations, 20 C.F.R. §§ 655.103(b) and 655.1300(c) and 29 C.F.R. § 791.2.

VI. <u>FLSA COLLECTIVE ACTION (§ 206(a))</u>

38. Named Plaintiffs maintain this action against Defendants for and on behalf of themselves and all other similarly situated persons who were jointly and severally employed by Defendants in 2019, 2020, and/or 2021, and continuing to the date final judgment is entered with respect to this action, to perform agricultural and related work for Defendants in or around Sampson County, North Carolina.

10

39.   This collective action is for those H-2A workers described in paragraph 38 above who were required by Defendants to pay an unlawful recruitment fee, as described in paragraphs 4-5 above, were not fully reimbursed for their inbound travel costs in the first paycheck they received, as described in paragraph 5 above, and/or were paid less than the minimum hourly wage of $7.25 per hour required by the FLSA for each H-2A worker's weekly wage(s).

40.   In the three (3) year time period immediately preceding the date on which any person files a Consent to Sue pursuant to 29 U.S.C. § 216(b) in this action, and ending with the date final judgment is entered with respect to this action, Defendants required named Plaintiffs and other employees described in paragraph 38 above to pay unlawful recruitment fees, did not fully reimburse Plaintiffs and those other employees for their inbound travel costs in the first paycheck Defendants issued to named Plaintiffs and other employees, and did not compensate named Plaintiffs and those other employees at least $7.25 per hour, the minimum hourly wage rate required by the FLSA, for all their work hours during each workweek that Plaintiffs and others worked for Defendants during the time period described above in this same paragraph.

41.   Defendants willfully and/or recklessly required named Plaintiffs and other employees described in paragraph 38 above to

11

pay unlawful recruitment fees. Defendants willfully and/or recklessly failed to fully reimburse named Plaintiffs and other employees for inbound travel costs in the first paycheck(s) issued to named Plaintiffs and other employees. Defendants further willfully and/or recklessly failed to compensate named Plaintiffs and those other employees at the minimum wage of $7.25 per hour for each hour named Plaintiffs and others worked for Defendants during each workweek during the time period described in paragraph 40 above.

VII. FACTUAL ALLEGATIONS

A. H-2A PROGRAM HISTORY OF DEFENDANT LOPEZ JR. AND HISTORY OF WORKING RELATIONSHIPS BETWEEN DEFENDANT LOPEZ JR. AND OTHER DEFENDANTS

42. Defendant Lopez Jr. participated in the H-2A program as an H-2A Labor Contractor beginning in 2016 and through at least 2021.

a. DEFENDANTS LOPEZ JR. AND RONNIE CARTER FARMS IN 2015

43. In 2015 Defendant Lopez Jr. attempted, unsuccessfully, to participate in the H-2A program by applying to USDOL for authorization to recruit, hire, and employ 49 H-2A workers, to be furnished to and/or harvest the crops of Defendant Ronnie Carter Farms and to be housed in employer-provided housing owned or operated by Defendant Ronnie Carter Farms.

12

44. That application of Defendant Lopez Jr. was denied, however, due to 22 deficiencies USDOL found in or with the application. For instance, while Defendant Lopez Jr. initially applied for authorization to employ 49 H-2A workers, Defendant Ronnie Carter Farms' housing and accommodations, the only housing listed on the Form 9142A application, was only certified to house 31 workers.

b. <u>H-2A PROGRAM HISTORY FROM 2016 THROUGH 2021</u>

45. Beginning in 2016 and every calendar year thereafter, through at least 2021, Defendant Lopez Jr. used the services of attorney Andrew Jackson of Andrew Jackson Law of Clinton, North Carolina ("Andrew Jackson"), as his agent to prepare and file his H-2A applications with the required federal and state agencies.

46. Each year from 2016 to 2019, and again in 2021, Defendant Lopez Jr. filed H-2A applications to furnish H-2A labor exclusively to Defendant Ronnie Carter Farms.

47. Each year from 2016 to 2019, Defendant Ronnie Carter Farms provided the migrant labor camp housing for the H-2A workers furnished by Defendant Lopez Jr. to harvest Defendant Ronnie Carter Farms' crops.

48. In the calendar year 2020, Defendant Lopez Jr. entered into fixed-site operation work contracts with and provided H-2A labor to Defendant Ronnie Carter Farms, Defendant Hannah Forrest Farms, and also GMK Farms, LLC, to harvest their crops.

13

49.  In 2020, Defendants Hannah Forrest Farms and Ronnie Carter Farms provided all employer-provided labor camp housing for H-2A workers hired by Defendant Lopez Jr. pursuant to the contracts or work agreements described in paragraph 48 above.

50.  In 2021 Defendant Lopez Jr.'s associate and, upon information and belief, biological relative, Defendant Beto Lopez, through agent Andrew Jackson, filed an H-2A application to furnish H-2A labor to Defendant Hannah Forrest Farms and entered into a fixed-site operation work contract with and provided H-2A labor to Defendant Hannah Forrest Farms.  Defendant Hannah Forrest Farms provided the migrant labor camp housing for those H-2A workers hired by Defendant Beto Lopez and furnished to Defendant Hannah Forrest Farms.

B.  <u>DEFENDANTS AND THE H-2A PROGRAM IN 2020</u>

51.  The Adverse Effect Wage Rate ("AEWR"), the minimum hourly rate H-2A employers must pay H-2A workers for work performed pursuant to an H-2A contract, in North Carolina in 2020 was $12.67 per hour, effective January 2, 2020.  *See* 84 Fed. Reg. 69,774 (Dec. 19, 2019).

52.  The minimum daily subsistence amount to be paid to H-2A workers for food during their transportation from Mexico to the U.S. as published in the Federal Register was $12.68 per day in 2020.  *See* 85 Fed. Reg. 16,133, 16,134 (Mar. 20, 2020).

14

53. In 2020, Defendant Lopez Jr. sought to employ a total of 148 H-2A employees, up from 40 H-2A employees in each of the calendar years 2019 and 2018.

54. In 2020, Defendant Lopez Jr., through his agent Andrew Jackson, submitted to USDOL and received approval for two (2) separate H-2A Agricultural Clearance Orders, or Forms ETA-790A, to bring workers to harvest crops in North Carolina.

55. One such Clearance Order, described in the preceding paragraph, sought permission to recruit, hire, and employ 74 H-2A workers from April 25, 2020 to July 1, 2020 (hereinafter referred to as "the 2020 Berry Clearance Order").

56. In the 2020 Berry Clearance Order, Defendant Lopez Jr. certified his compliance with the required assurances contained in 20 C.F.R. §§ 655.121, 655.122, and 655.135, including:

a. the assurance that prospective members of his H-2A crew would be provided with a work contract containing all terms and conditions of employment, containing, at a minimum, all of the provisions required under 20 C.F.R. § 655.122 no later than the time at which the worker applied for a visa to work for Defendant Lopez Jr., per 20 C.F.R. § 655.122(q);

b. the assurance to pay all employees at least the highest of the AEWR, the prevailing hourly wage or piece rate, the agreed-upon collective bargaining wage, or the Federal or

15

State minimum wage for every hour or portion thereof worked during a pay period, as required by 20 C.F.R. §§ 653.501, 655.120(a), and 655.122(l);

c. the assurance that, for those employees paid on a piece-rate basis, Defendant Lopez Jr. would supplement employees' wages in any pay period in which an employee's piece-rate earnings did not equal at least the amount employees would have earned had they been paid hourly at the required wage, the AEWR, per paragraph 56.b. above and as required by 20 C.F.R. § 655.122(l)(2);

d. the assurance that the employer would comply with all applicable Federal, State and local laws and regulations, including but not limited to the FLSA and TVPRA, as required by 20 C.F.R. § 655.135(e);

e. the assurance that the employer and his agents have not sought or received payment of any kind from any employee for any activity related to obtaining H-2A labor certification, including payment of the employer's attorneys' fees, application fees, or recruitment costs, per 20 C.F.R. § 655.135(j); and,

f. the assurance that the employer has contractually forbidden any foreign labor contractor or recruiter (or any agent of any such foreign labor contractor or recruiter) whom the employer engages, either directly or indirectly, in

16

international recruitment of H-2A workers from seeking or receiving payments or other compensation from prospective employees, per 20 C.F.R. § 655.135(k).

57.     Defendant Lopez Jr. signed the above-described assurances contained in the 2020 Berry Clearance Order under penalty of perjury.

58.     USDOL approved the 2020 Berry Clearance Order. That Clearance Order listed only 2 fixed-site agricultural operations or grower worksites: Defendants Hannah Forrest Farms and Ronnie Carter Farms. A copy of the 2020 Berry Clearance Order is being filed concurrently with this Complaint and is labeled as Exhibit N.

59.     In the 2020 Berry Clearance Order Defendant Lopez Jr. certified that all workers employed pursuant to that Order would be paid a minimum of $12.67 per hour for each hour worked each workweek.

60.     In order to receive approval from USDOL to employ 74 H-2A workers, Defendant Lopez Jr. included with the 2020 Berry Clearance Order a fixed-site operation work contract with Defendant Hannah Forrest Farms, dated January 29, 2020 ("2020 Hannah Forrest Berry Contract"), and a fixed-site operation work contract with Defendant Ronnie Carter Farms, dated only "February 2020" ("2020 Ronnie Carter Berry Contract"), the submission of which contracts is required pursuant to 20 C.F.R. § 655.132(b)(4).

17

A copy of the 2020 Hannah Forrest Berry Contract and the 2020 Ronnie Carter Berry Contract are being filed concurrently with this Complaint and are labeled as Exhibit O and Exhibit P, respectively.

61.    While no time period is specified in the 2020 Hannah Forrest Berry Contract, the time period specified in the 2020 Ronnie Carter Berry Contract mirrors the exact start and end dates of work specified in the 2020 Berry Clearance Order filed with USDOL on behalf of Defendant Lopez Jr.

62.    Without the 2020 Ronnie Carter Berry Contract and the 2020 Hannah Forrest Berry Contract, Defendant Lopez Jr.'s 2020 Berry Clearance Order would not have complied with 20 C.F.R. § 655.132(b)(4) when it was submitted to USDOL and thus would not have been approved.

63.    Upon information and belief, by entering into their respective fixed-site operation work contracts with Defendant Lopez Jr., Defendants Hannah Forrest Farms and Ronnie Carter Farms intended to avoid certain costs of business associated with seeking H-2A Temporary Employment Certification to directly employ foreign workers in 2020 to harvest berries on their farms.  These costs included necessary recruitment costs, costs of H-2A workers' visa-processing and inbound travel expenses, other transportation costs, costs of workers' compensation coverage, and the cost of visa-processing agents' fees.

18

64.    Defendant Lopez Jr. knowingly included false and deceptive terms in the 2020 Berry Clearance Order with intent to defraud, including but not limited to:

a. the assurance that Defendant Lopez Jr. and his agents had not sought or received payment of any kind from any employee for any activity related to obtaining H-2A labor certification, including payment of the employer's attorneys' fees, application fees, or recruitment costs;

b. the assurance that Defendant Lopez Jr. contractually forbade any foreign labor contractor or recruiter, or any agent of such foreign labor contractor or recruiter, whom he engaged directly or indirectly in international recruitment of H-2A workers to seek or receive any payment or other compensation from prospective employees;

c. that Defendant Lopez Jr. had sufficient funds to pay the wages promised;

d. that workers would be paid in accordance with the 2020 Berry Clearance Order and applicable federal and state law(s);

e. that Defendant Lopez Jr. would pay $12.67 per hour for each hour worked by workers employed pursuant to the 2020 Berry Clearance Order; and,

f. that the 2020 Berry Clearance Order described the actual terms and conditions of the employment being offered and

19

that the Order contained all material terms and conditions of the offered employment.

65. Upon information and belief, Defendant Lopez Jr. knew the assurances were false at the time that he swore that the assurances were true and accurate.

66. Upon information and belief, Defendant Lopez Jr. did not intend to comply with the sworn assurances contained in the 2020 Berry Clearance Order.

67. Upon information and belief, Defendant Lopez Jr. did not have sufficient funds to pay the wages promised in the 2020 Berry Clearance Order and was dependent upon income from Defendants Hannah Forrest Farms and Ronnie Carter Farms in order to pay such wages.

68. Upon information and belief, Defendant Lopez Jr. did not intend to comply with all applicable federal, state, and local employment-related laws and regulations, in that he did not intend to pay for workers' transportation, recruitment, and visa costs, as required by the FLSA, NCWHA, and H-2A regulations.

69. In 2020 Defendant Lopez Jr., through his agent Andrew Jackson, submitted to USDOL and received approval for a second H-2A Agricultural Clearance Order, or Form ETA-790A, seeking permission to recruit, hire, and employ another 74 H-2A workers from September 20, 2020, to December 15, 2020 (hereinafter referred to as "the 2020 Sweet Potato Clearance Order").

20

70.  USDOL approved the 2020 Sweet Potato Clearance Order. That Clearance Order listed only one fixed-site agricultural operation or grower worksite: GMK Farms, LLC.

71.  Though GMK Farms, LLC was the lone fixed-site agricultural operation or grower listed in the 2020 Sweet Potato Clearance Order, Defendants Hannah Forrest Farms and Ronnie Carter Farms provided the housing for the 74 H-2A workers employed pursuant to that Clearance Order.

72.  In 2020 Defendant Beto Lopez, through his agent Andrew Jackson, for the first time submitted to USDOL and received approval for an H-2A Agricultural Clearance Order, or Form ETA-790A, to bring workers to harvest crops in North Carolina.

73.  That Clearance Order sought permission to recruit, hire, and employ 48 H-2A workers from May 16, 2020, to August 1, 2020.

74.  USDOL approved that same Clearance Order.  That Clearance Order listed only one fixed-site agricultural operation or grower worksite: Makin Berries LLC.

75.  In addition to the contract or agreement described in the preceding paragraph, at all times relevant to this Complaint Defendant Beto Lopez was affiliated with Defendant Lopez Jr. and shared and/or co-employed Plaintiffs with Defendant Lopez Jr. in 2020, such that at times in 2020, some if not all Plaintiffs worked some days and/or hours harvesting berries under the supervision of Defendant Beto Lopez.

C.    <u>FOREIGN RECRUITMENT OF PLAINTIFFS</u>

76.    Upon information and belief, in preparation for the 2020 season Defendants Hannah Forrest Farms and Ronnie Carter Farms directed Defendant Lopez Jr. on matters regarding the recruitment of Defendant Lopez Jr.'s 2020 H-2A farm labor crew, including Plaintiffs.

77.    Defendant Lopez Jr. directed and utilized various agents in Mexico to recruit named Plaintiffs and other foreign workers for the 2020 Berry Clearance Order.

78.    Defendant Lopez Jr., himself and by and through his agents in Mexico, required that exorbitant recruitment fees be paid to Defendant Lopez Jr. and his agents as a condition of Plaintiffs' employment with Defendant Lopez Jr.  Those recruitment fees charged by Defendant Lopez Jr. were not lawful charges and are and were prohibited pursuant to 20 C.F.R. § 655.135 (j).

79.    Through his agents in Mexico and/or himself, Defendant Lopez Jr. enticed Plaintiffs to incur significant travel and visa-related expenses and pay the exorbitant recruitment fees by making fraudulent and deceptive promises to Plaintiffs.  Those fraudulent and deceptive promises included, but were not limited to, promises of pay of at least $12.67 per hour for each hour worked by each Plaintiff and the reimbursement of Plaintiff's inbound travel costs and expenses after they arrived in North Carolina.

22

80.  In reliance on Defendant Lopez Jr.'s promises to them, Plaintiffs Martinez-Morales, Marisol Florencio-Gutierrez, Flores-Arriaga, Meza-Garcia, Navarrete-Flores, Procopio-Diaz, Romero-Patricio, Vargas-Espiritu, and Villalva-Gatica each made payments of approximately 80,000 Mexican pesos (around $3,230.00 U.S. dollars in April of 2020) in recruitment fees to Defendant Lopez Jr.'s agents for the opportunity to work with Defendant Lopez Jr. on a legal work visa in North Carolina in 2020.

81.  In reliance on Defendant Lopez Jr.'s promises to him, Plaintiff De la Cruz-Nava and family members made a payment of approximately 70,000 Mexican pesos (around $2,825.00 U.S. dollars in April of 2020) in recruitment fees to Defendant Lopez Jr.'s agents for the opportunity to work with Defendant Lopez Jr. on a legal work visa in North Carolina in 2020.

82.  In reliance on Defendant Lopez Jr.'s promises to him, Plaintiff Cuauhtemoc Florencio-Gutierrez made a payment of $1,200.00 U.S. dollars in recruitment fees to Defendant Lopez Jr. shortly after his arrival in North Carolina for the opportunity to work with Defendant Lopez Jr. on a legal work visa in North Carolina in 2020.

83.  In reliance on Defendant Lopez Jr.'s promises to him, Plaintiff Florencio-Sanchez made a payment of $2,000.00 U.S. dollars in recruitment fees to Defendant Lopez Jr. shortly after

his arrival in North Carolina for the opportunity to work with Defendant Lopez Jr. on a legal work visa in North Carolina in 2020.

84.    In reliance on Defendant Lopez Jr.'s promises to her, Plaintiff Gomez-Hernandez made a payment of approximately 130,000 Mexican pesos (around $5,245.00 U.S. dollars in April of 2020) as a recruitment fee to Defendant Lopez Jr.'s agent in Mexico.

85.    After Plaintiff Gomez-Hernandez paid that recruitment fee to Defendant Lopez Jr.'s agent and submitted her photo identification to the same agent for issuance of her H-2A visa, Defendant Lopez Jr. himself directly contacted Plaintiff Gomez-Hernandez by telephone and informed her that he had not received her recruitment fee.

86.    During that telephone conversation Defendant Lopez Jr. advised Plaintiff Gomez-Hernandez that she would be required to pay or compensate him for the allegedly unpaid recruitment fee by some other manner.    Plaintiff Gomez-Hernandez believed that Defendant Lopez Jr. was referencing or referring to additional or extended fieldwork she may be required to perform.

87.    Defendant Lopez Jr.'s agents further required all Plaintiffs to pay them additional payments of several thousand Mexican pesos each prior to traveling to the U.S. Consulate in Monterrey.

88.    Plaintiffs understood that that payment described in the preceding paragraph was to be allocated to the cost of the visa

24

and any processing fee such as legal fees or paperwork associated with procuring the visa (hereinafter the "visa-related fees").

89. The visa-related fees were in addition to the recruitment fees Plaintiffs paid to Defendant Lopez Jr. either directly or via his local recruiting agents.

90. No Plaintiff individually had the finances or resources to pay Defendant Lopez Jr.'s required fees and costs themselves, and so each Plaintiff procured loans and money from various other sources in order to pay the required and above-described fees and costs. The loans that some if not all Plaintiffs procured, whether formally or informally, required some or all Plaintiffs to pay interest on the loans in addition to paying back the principal amount.

91. In addition to meeting with potential workers, making fraudulent promises regarding the terms and conditions of employment, and collecting recruitment fees, Defendant Lopez Jr.'s agents gave potential workers, including Plaintiffs, instructions on how to apply for and obtain an H-2A visa, such as when to travel to Monterrey, Mexico, how to receive their H-2A visas and passports in Monterrey, when and how to depart for the job in North Carolina, and, if necessary, where to stay in Monterrey.

92. Defendant Lopez Jr.'s agents also collected information from Plaintiffs, for their visa applications, including their home addresses in Mexico, their spouses' and/or family members' names

25

and addresses in Mexico, their passport information, and other biographical information about Plaintiffs.

93.  Defendant Lopez Jr. failed to provide Plaintiffs with a work contract containing all terms and conditions of employment, and containing at a minimum all of the terms and conditions mandated pursuant to 20 C.F.R. § 655.122, by or before the time that Plaintiffs applied for a visa to work for him, and Defendant Lopez Jr. thereby violated 20 C.F.R. § 655.122(q).

94.  When Defendant Lopez Jr. did finally provide Plaintiffs with a work contract, the contract language was primarily in English, not a language understood by the Plaintiffs, and Defendant Lopez Jr. thereby violated 20 C.F.R. § 655.122(q).

95.  By and through his agents, Defendant Lopez Jr. instructed Plaintiffs to depart from their homes in the Mexican states of Chiapas and Guerrero to travel to Monterrey, Mexico, to collect their passports with their 2020 H-2A visas.

96.  Prior to their departure from their homes, Defendant Lopez Jr. failed to notify Plaintiffs of all travel-related expenses that they would be required to incur, at their personal expense, during their trip to the U.S. to work for him.

97.  Plaintiffs incurred, at their own personal expense, the costs of travel from their respective homes in Mexico to the U.S. Consulate in Monterrey.

26

98.  Because of the timing of that process, Plaintiff Gomez-Hernandez also incurred, at personal expense, the cost of lodging for several nights in a hotel in Monterrey near the Consulate.

99.  After traveling to Monterrey, Mexico, at Defendant Lopez Jr.'s instruction(s), Plaintiffs then traveled from Monterrey to Houston, Texas, in a bus or van arranged by Defendant Lopez Jr. Defendant Lopez Jr., through his agents, required Plaintiffs to pay for this transportation.

100.  Defendant Lopez Jr. then transported Plaintiffs, except for Plaintiff Gomez-Hernandez, from Houston, Texas, to North Carolina.

101.  Plaintiff Gomez-Hernandez did not travel with other Plaintiffs, but was transported separately from Houston to North Carolina via a commercial transportation service arranged by Defendant Lopez Jr. Defendant Lopez Jr. required Plaintiff Gomez-Hernandez to pay for that transportation.

102.  As described above, in addition to the recruitment and visa-related fees, Plaintiffs incurred additional costs, at their own personal expense, including the cost of travel from their various hometowns to the U.S. Consulate in Monterrey, Mexico; bus travel from Monterrey to Houston, Texas; the border-crossing fee; meals during their period of international travel; and, for Plaintiff Gomez Hernandez, lodging in Monterrey awaiting the issuance of her 2020 H-2A visa.

27

103.	Plaintiff Gomez-Hernandez was in transit for approximately ten (10) days from the place(s) where she was recruited in Mexico to Defendants' worksites in North Carolina. All other Plaintiffs were in transit for three (3) to four (4) days from the places where they were recruited in Mexico to Defendants' worksites in North Carolina.

104.	The actual inbound travel expenses that Defendant Lopez Jr. required Plaintiffs to incur, separate and apart from the recruitment fees and visa-related fees Defendant Lopez Jr. required Plaintiffs to pay, were greater than many Plaintiffs anticipated and most if not all Plaintiffs and their coworkers depleted almost all their remaining funds to complete their trip to North Carolina for the job.

D.	ARRIVAL IN NORTH CAROLINA

105.	Defendant Lopez Jr. caused Plaintiffs Martinez-Morales, De la Cruz-Nava, Marisol Florencio-Gutierrez, Flores-Arriaga, Gomez-Hernandez, Meza-Garcia, Navarrete-Flores, Procopio-Diaz, Romero-Patricio, Vargas-Espiritu, and Villalva-Gatica (the "April Arriving Plaintiffs"), to depart their respective hometowns in Mexico in late April, 2020, to travel to North Carolina to work for him.

106.	The April Arriving Plaintiffs, except for Plaintiff Gomez-Hernandez, arrived at Defendants' worksites and/or migrant labor camp housing on approximately April 26 or April 27, 2020,

while Plaintiff Gomez-Hernandez arrived on approximately April 29, 2020.

107. Defendants did not make work available to the April Arriving Plaintiffs or other similar employees for about an entire calendar week, until or until around May 4, 2020, approximately 10 to 11 days after Defendant Lopez. Jr. had directed or required the April Arriving Plaintiffs and similarly situated employees, and approximately 14 days for Plaintiff Gomez-Hernandez, to depart from their hometowns in Mexico for the job in North Carolina.

108. Because Defendants did not make work available to the April Arriving Plaintiffs for about an entire calendar week, those Plaintiffs were isolated in the employer-provided migrant labor camp housing without any income for that entire calendar week.

109. Because most if not all Plaintiffs had nearly depleted all their money paying for the recruitment fees and travel expenses, they had little money to buy food during their first calendar week in North Carolina, and they experienced food insecurity and were hungry that first week as a result.

110. Upon information and belief, Defendant Lopez Jr. deliberately instructed such Plaintiffs and others to arrive one calendar week prior to their commencement of work in order to exploit their debt, described above in this Complaint, and coerce Plaintiffs to remain in his employment.

111.   Defendant Lopez Jr. caused Plaintiffs Cuauhtemoc Florencio-Gutierrez and Florencio-Sanchez ("June Arriving Plaintiffs") to depart their respective hometowns in Mexico in early June, 2020, to travel to North Carolina to work for him.

112.   The June Arriving Plaintiffs arrived at Defendants' worksites and/or migrant labor camp housing on approximately June 7, 2020.

113.   While the June Arriving Plaintiffs did not go approximately a full calendar week without work immediately after their arrival in North Carolina, their foreign recruitment and almost all other experiences, particularly the violations and abuses they suffered, are similar and in some respects identical to those of the April Arriving Plaintiffs.

E.   WORK IN BERRIES IN NORTH CAROLINA

114.   Defendant Lopez Jr. provided labor to and supervised Plaintiffs and coworkers on various farms and worksites operated by Defendants Hannah Forrest Farms and Ronnie Carter Farms.

115.   On some workdays, Defendant Lopez Jr. transported Plaintiffs by bus between those farms and worksites and their provided housing and never told Plaintiffs the name or address of the farms or worksites.

116.   On some workdays, Defendant Beto Lopez provided labor to and supervised Plaintiffs and coworkers on various farms and worksites operated by Makin Berries LLC.

30

117. On those workdays described in paragraph 116, Defendant Beto Lopez and/or Defendant Lopez Jr. transported Plaintiffs by bus between those farms and worksites and Plaintiffs' labor camp housing without informing Plaintiffs of the name or address of the farms or worksites on those same days.

118. Upon information and belief, Defendants Hannah Forrest Farms and Ronnie Carter Farms received financial benefits, including increased harvest and profits, by utilizing Defendant Lopez Jr. to furnish farmworkers, including Plaintiffs, to harvest their crops on their farms in 2020.

119. Defendant Lopez Jr. also relied on Defendants Hannah Forrest Farms and Ronnie Carter Farms to oversee and/or jointly oversee activities related to the housing, training, supervision, and field work of Plaintiffs and coworkers during the 2020 season.

120. Upon information and belief, during the 2020 season Defendants Hannah Forrest Farms and Ronnie Carter Farms regularly directed Defendant Lopez Jr. on matters regarding the housing, training, supervision, and field work of Plaintiffs and coworkers on Defendants' respective farming operations.

121. Upon information and belief, during the 2020 season Defendants Hannah Forrest Farms and Ronnie Carter Farms regularly directly supervised the field work of Plaintiffs and other workers on their respective farming operations.

F.   UNLAWFUL PAY PRACTICES

31

122. On Friday, May 8, 2020, all April Arriving Plaintiffs and their similarly situated coworkers received their first paycheck.

123. The June Arriving Plaintiffs did not receive any paycheck on their first pay day.

124. Defendants failed to reimburse all Plaintiffs and their similarly situated coworkers during their first workweek and/or in their first paycheck for the fees they incurred in Mexico, including the recruitment fees they were required to pay to Defendant Lopez Jr.'s agents in Mexico and the travel-related expenses they incurred traveling from their respective hometowns to the worksite(s) in North Carolina.

125. Defendant Lopez Jr. provided each April Arriving Plaintiff a wage statement alleging they were each reimbursed their inbound travel costs, however Defendants did not actually pay this money or reimbursement to any Plaintiff or similarly situated coworker.

126. The April Arriving Plaintiffs felt they had no choice but to sign the false reimbursement acknowledgement because they desperately needed their first paycheck. They felt coerced because of their indebtedness, recent food insecurity, and their need to provide for their families.

127. Defendants' failure to reimburse Plaintiffs and their similarly situated coworkers for the recruitment fees and travel

and visa-related fees, incurred primarily for the benefit of Defendants, in their first workweek and/or first paycheck brought Plaintiffs' pay below the FLSA minimum wage and the NCWHA promised wage for work performed that first week.

128.  Defendants willfully and/or recklessly failed to reimburse Plaintiffs and similarly situated coworkers described in paragraphs 38 through 41 above for their recruitment fees and travel- and visa-related expenses in their first workweek and/or first paycheck, as alleged in the preceding paragraph.

129.  For all work performed for Defendants throughout the entirety of 2020, Defendant Lopez Jr. paid Plaintiffs and their coworkers, if he paid them at all, on a piece-rate pay basis.

130.  In addition to and/or including the first workweek described in paragraph 127 above, for each workweek each Plaintiff worked for Defendants in 2020 no Plaintiff was ever paid by Defendants the promised wage rate of $12.67 per hour, the AEWR, the federally established minimum hourly wage rate for H-2A workers in North Carolina that year.

131.  Additionally, and as described in paragraph 127 above, and paragraphs 158, 165, 169, 172, 173, and 180 infra, for other workweeks in 2020 Defendants failed to pay some if not all Plaintiffs at the FLSA minimum hourly wage rate of $7.25 per hour for each hour worked during those workweeks.

33

132.   In addition to the first workweek, or paycheck, Defendants willfully and/or recklessly failed to pay Plaintiffs and other employees described in paragraphs 38 through 41 above at the FLSA minimum hourly wage rate of $7.25 per hour for each hour worked during those weeks described in the preceding paragraph and paragraphs 158, 165, 169, 172, 173, and 180, infra.

133.   As detailed in paragraphs 122-132 of this Complaint, throughout the entirety of the time periods described in paragraphs 114-121 above Defendants failed to pay all wages owed to Plaintiffs when those wages were due to Plaintiffs, in violation of N.C. Gen. Stat. § 95-25.6.

134.   When he did pay Plaintiffs, Defendant Lopez Jr. paid each Plaintiff by check for each workweek each Plaintiff worked for Defendants in 2020, except for those workweeks he did not pay some if not all Plaintiffs anything at all.  No Plaintiff ever received any paystub or earnings statement for any work performed for Defendants in 2020, even though issuance of such a paystub is required by 20 C.F.R. § 655.122(k).

G.   DEFENDANTS USED PLAINTIFFS' DEBT, THREATS, FORCE, AND OTHER COERCIVE MEASURES TO COMPEL PLAINTIFFS' FORCED LABOR

135.   Because of their indebtedness, directly caused by the unlawful recruitment fees they were illegally charged, the non-reimbursement of their travel expenses in their first paycheck(s), and the fraudulent promise(s) that they would be paid at least

34

$12.67 per hour for every hour worked, Plaintiffs were coerced to continue working for Defendants in that they would lose their H-2A legal status if they left Defendants' employ and they feared that if they did leave or attempt to leave they would be deported and/or they would not be able to repay their debts and support themselves and their families back in Mexico.

136.    Plaintiffs Martinez-Morales, De la Cruz-Nava, Cuauhtemoc Florencio-Gutierrez, Florencio-Sanchez, Meza-Garcia, Navarrete-Flores, Procopio-Diaz, Romero-Patricio, Vargas-Espiritu, and Villalva-Gatica (collectively "male Plaintiffs") were housed in employer-provided migrant labor camp housing (the "Hannah Forrest Labor Camp") owned by Defendant Hannah Forrest Farms, or a Defendant Hannah Forrest Farms officer, and registered with the North Carolina Department of Labor ("NCDOL") by Defendant Hannah Forrest Farms in 2020.  The housing was operated in 2020 by Defendants Hannah Forrest Farms and Lopez Jr.

137. Plaintiffs Marisol Florencio-Gutierrez, Flores-Arriaga, and Gomez-Hernandez (collectively "female Plaintiffs") were housed in employer-provided migrant labor camp housing (the "Ronnie Carter Labor Camp") owned by Defendant Ronnie Carter Farms, or a Defendant Ronnie Carter Farms officer, and registered with NCDOL by Defendant Ronnie Carter Farms in 2020.  Defendants Ronnie Carter Farms and Lopez Jr. operated this housing in 2020.

35

138.   The Hannah Forrest Labor Camp and the Ronnie Carter Labor Camp are remote camps hidden from view from any public road. They can only be accessed by unmarked and/or dirt roads.

139.   In 2020, the geographic area in which the Ronnie Carter Labor Camp was located lacked coverage by most major cell phone companies. Any female Plaintiff housed there had to travel a great distance from the camp to successfully make a phone call, use an internet-based text or voice messaging service, or otherwise stably access information online.

140.   In 2020, Defendants regularly jointly monitored and controlled Plaintiffs' movements, physical and otherwise, in those labor camps and prohibited outside visitors to the labor camps during Plaintiffs' non-work hours.

141.   Defendant Lopez Jr., directly himself and/or through his supervisory staff in North Carolina, threatened Plaintiffs and their coworkers on numerous occasions that he would report anyone who fled employment to U.S. immigration authorities. He threatened that they would be promptly deported, and/or that he or his supervisory agents would personally deport them by driving them to the U.S.-Mexico border and abandoning them there.

142.   Defendant Lopez Jr. first unlawfully confiscated April Arriving Plaintiffs' and other similarly situated workers' passports and visas for multiple days in May of 2020.

36

143.  Defendant Lopez Jr. unlawfully retained April Arriving Plaintiffs' and coworkers' Social Security cards upon those cards being delivered by mail to Defendant Lopez Jr.'s residential address in Atkinson, North Carolina, the address listed on behalf of Plaintiffs on their Social Security card ("SSC") applications. He retained their SSCs through the remainder of their employ with Defendants.

144.  Some weeks after they had applied for SSCs, when any April Arriving Plaintiff inquired regarding the status of their SSC, Defendant Lopez Jr. fraudulently misrepresented to the inquiring Plaintiff that there was some processing delay on the part of the Social Security office, when in fact Defendant Lopez Jr. was already in possession or retention of April Arriving Plaintiffs' and other workers' SSCs.

145.  One Saturday afternoon in June, Plaintiffs Martinez-Morales, Meza-Garcia, Procopio-Diaz, and other coworkers and/or male Plaintiffs decided to rest and not work after lunch that Saturday, due to various physical ailments and weariness and/or near exhaustion from working more than 10 hours per day with few breaks for several consecutive days in the North Carolina summer and sun.

146.  Shortly into their attempted rest in or at the Hannah Forrest Labor Camp, Defendant Lopez Jr. and agents entered the Plaintiffs' room unannounced, instructed those Plaintiffs to

37

immediately don their work clothes and rapidly proceed to the assigned worksite to perform their assigned work. Defendant Lopez Jr. advised Plaintiffs that they did not have the liberty or option to not work, or rest, and reprimanded those Plaintiffs for attempting to rest that half day.

H.   DEFENDANT LOPEZ JR'S. SEXUAL ASSAULT OF PLAINTIFF GOMEZ-HERNANDEZ

147.   Approximately 200 feet from the Ronnie Carter Labor Camp where Plaintiff Gomez-Hernandez and female workers were housed, Defendant Lopez Jr. maintained and operated a work office, also on land and property owned by Defendant Ronnie Carter Farms.

148.   After Plaintiff Gomez-Hernandez arrived at that labor camp, Defendant Lopez Jr., through an agent, summoned Plaintiff Gomez-Hernandez to his office one evening.  Plaintiff Gomez-Hernandez understood that the purpose of that meeting was for Defendant Lopez Jr. to examine her passport and complete employment-related paperwork on her behalf.

149.   After being summoned by his agent, Plaintiff Gomez-Hernandez walked the 200 or so feet to his office, entered his office, and surrendered her passport to Defendant Lopez Jr., as she had been instructed to do.

150.   Defendant Lopez Jr. donned or brandished a knife on his work belt, conspicuous and visible to all.

38

151. After Plaintiff Gomez-Hernandez handed her passport to Defendant Lopez Jr., Defendant Lopez Jr. abruptly informed or reminded her that he had never received the 130,000-peso recruitment fee she had been required to pay. He stated that in order to satisfy or otherwise cancel that alleged debt she owed him, Plaintiff Gomez-Hernandez must submit to his sexual advances.

152. Defendant Lopez Jr. informed Plaintiff Gomez-Hernandez that, if she did not submit to his sexual advances, she would be fired and deported.

153. Plaintiff Gomez-Hernandez attempted to resist and flee the office.

154. Upon her attempt to flee the office, Defendant Lopez Jr. physically restrained Plaintiff Gomez-Hernandez and sexually assaulted her.

155. Approximately 2 weeks after the assault, and as soon as she was able to, Plaintiff Gomez-Hernandez left the majority of her belongings in the Ronnie Carter Labor Camp and escaped from the camp on foot, in the middle of the night, through an expansive, densely wooded area next to the camp.

156. In the weeks after she escaped, Defendant Lopez Jr. repeatedly contacted Plaintiff Gomez-Hernandez by telephone and threatened her with deportation and other harm if she did not return to work for Defendants that 2020 agricultural season.

39

157. Defendant Lopez Jr. never provided Plaintiff Gomez-Hernandez's SSC to her, and instead only provided it to undersigned counsel's office after undersigned counsel's office sent a demand letter to Defendant Lopez Jr. on Plaintiff Gomez-Hernandez's behalf more than a month after Plaintiff Gomez-Hernandez escaped.

158. Though he provided her unlawfully retained SSC, upon information and belief to date Defendant Lopez Jr. has not paid Plaintiff Gomez-Hernandez her last paycheck for the last workweek she worked for Defendants.

I. THE ESCALATING THREATS AND COERCION AND THE CIRCUMSTANCES OF PLAINTIFFS' SEPARATION FROM DEFENDANTS' EMPLOYMENT

159. In addition to, and in escalation of, the threats and coercion described above in paragraphs 135 through 146, Defendant Lopez Jr., after returning April Arriving Plaintiffs' and other workers' passports after he first confiscated them in May, again confiscated all Plaintiffs' (except for Plaintiff Gomez-Hernandez's) passports on or around June 17, 2020, through his agent.

160. The pretextual reason that Defendant Lopez Jr. provided, through his agent, for the confiscation or re-confiscation of passports was that Defendant Lopez Jr. needed Plaintiffs' and other workers' passports again, or initially, to address some sort of administrative delay on the part of the relevant state agency with respect to the issuance of their SSCs. In reality, however,

40

Defendant Lopez Jr. had received the April Arriving Plaintiffs' SSCs at his personal residence more than a month earlier, on or around May 13, 2020, and Defendant Lopez Jr. was unlawfully retaining April Arriving Plaintiffs' and others' SSCs without their knowledge.

161. Plaintiffs' H-2A visas, and upon information and belief most if not all of their coworkers' H-2A visas, were set to expire on or around July 1, 2020.

162. Notwithstanding the imminent expiration of their H-2A visas, Plaintiffs, except for Plaintiff Gomez-Hernandez, who had already escaped from his employment, and Plaintiffs' coworkers again (and initially for the June Arriving Plaintiffs) provided their passports to Defendant Lopez Jr., through his agent, as directed.

163. A couple days after Defendant Lopez Jr. confiscated Plaintiffs' and other workers' passports a second time, or a first time, Defendant Lopez Jr.'s agent(s) informed Plaintiffs and their coworkers that they were required to stay for several more months, to perform agricultural work in Michigan and to perform additional agricultural work in North Carolina.

164. All Plaintiffs except Plaintiff Gomez-Hernandez remained in Defendants' employment and continued to work long hours, six (6) to seven (7) days per week, through June 23 or June 24, 2020.

41

165. Though those Plaintiffs continued to work for Defendants through at least June 23 or June 24, 2020, no Plaintiff received any paycheck after June 12, 2020, until either the intervention of local law enforcement on June 25, 2020, or until undersigned counsel's office sent a demand letter to Defendant Lopez Jr. after Plaintiffs fled Defendants' employment.

166. Because of the fraudulent promises made to Plaintiffs concerning wage rates to be paid and other terms of employment described above in this Complaint, the threats and coercion described above in this Complaint, and because they were being required to perform unauthorized work after their H-2A visas were set to expire, no Plaintiff wanted to stay and continue to work for Defendants after their visas were set to expire.

167. Defendant Lopez Jr., himself and through his agents, informed Plaintiffs that, if they did not stay and continue to work for Defendants, he would not return their confiscated passports to them. Defendant Lopez Jr., himself and through his agents, told Plaintiffs that they would not receive any other paycheck for any work they performed during the last 2 or so weeks of work. Defendant Lopez Jr. informed Plaintiffs that, if they did not stay and continue to work for him, past the expiration date of their H-2A visas and at a different farm, he personally would drive Plaintiffs to the U.S.-Mexico border and abandon them there.

42

a. ESCAPE OF PLAINTIFFS MARTINEZ-MORALES, DE LA CRUZ-NAVA, FLORES-ARRIAGA, MEZA-GARCIA, NAVARRETE-FLORES, PROCOPIO-DIAZ, ROMERO-PATRICIO, AND VILLALVA-GATICA

168.  Plaintiffs Martinez-Morales, De la Cruz-Nava, Flores-Arriaga, Meza-Garcia, Navarrete-Flores, Procopio-Diaz, Romero-Patricio, and Villalva-Gatica, either alone or in groups, escaped from Defendants' employment during the dark of the night or similar manner on or around June 24, 2020.

169.  Those Plaintiffs fled from their employment and their respective labor camps without their passports and without having received any paycheck for the last 2 weeks they worked.  They fled to avoid being forced to continue to labor for Defendants past the expiration of their H-2A visas and the time period specified in their work contracts (the 2020 Berry Clearance Order), and to avoid being deported while still owing large amounts of debt they incurred as a direct result of Defendant Lopez Jr.'s fraudulent promises concerning work conditions and pay.

170.  All of the Plaintiffs described in the 2 preceding paragraphs were ultimately provided, via undersigned counsel's office, with their confiscated passports and SSCs after they fled their employment and after undersigned counsel's office sent a demand letter to Defendant Lopez Jr.

171.  In addition to the return of their passports and provision of their SSCs, Plaintiffs Martinez-Morales, De la Cruz-

43

Nava, Meza-Garcia, Navarrete-Flores, Procopio-Diaz, and Villalva-Gatica were also each issued a last paycheck, each check dated June 26, 2020, and each check in the amount of $380.00.

172. Plaintiffs Flores-Arriaga and Romero-Patricio to date have not received any paycheck for the last 2 workweeks they worked for Defendants in 2020.

173. No Plaintiff described in paragraphs 168 through 172 above has been compensated at the FLSA minimum hourly wage rate or the AEWR for either of the last 2 workweeks they worked for Defendants in 2020.

b. ESCAPE OF PLAINTIFFS CUAUHTEMOC FLORENCIO-GUTIERREZ, MARISOL FLORENCIO-GUTIERREZ, FLORENCIO-SANCHEZ, AND VARGAS-ESPIRITU

174. Plaintiffs Cuauhtemoc Florencio-Gutierrez, Marisol Florencio-Gutierrez, Florencio-Sanchez, and Vargas-Espiritu, together, retrieved their confiscated passports and a final paycheck before they left their employment and respective labor camps. They did so only after law enforcement intervened on their behalf.

175. A family friend of Plaintiff Florencio-Sanchez learned that Plaintiff Florencio-Sanchez's and coworkers' passports and paychecks were being withheld to attempt to coerce the workers to continue working for Defendants.

176. Upon learning the above, the family friend drove to the Hannah Forrest Labor Camp in or near Rose Hill, North Carolina.

44

177. While in route to the Hannah Forrest Labor Camp or immediately upon arriving to the labor camp, the family friend called 911 and asked for help in connection with the withheld passports and paychecks.

178. A Sampson County Sheriff's Office deputy was dispatched to the Hannah Forrest Labor Camp. Shortly after the deputy arrived, Defendants returned the 4 Plaintiffs' passports and issued each a final paycheck.

179. Those 4 Plaintiffs were not provided their SSCs, however, until after undersigned counsel's office sent a demand letter to Defendant Lopez Jr. in early July of 2020.

180. None of those 4 Plaintiffs has been compensated at the FLSA minimum hourly wage rate for both of their last 2 workweeks they worked for Defendants in 2020.

181. None of those 4 Plaintiffs has been compensated at the promised hourly AEWR for either of the last 2 workweeks they worked for Defendants in 2020.

VIII.    CLAIMS FOR RELIEF

    A.    FIRST CLAIM FOR RELIEF (FLSA)

182. Plaintiffs adopt and reallege paragraphs one through 181 above as though fully set out herein.

183. As alleged and described in paragraphs 127, 158, 165, 169, 172, 173, and 180 of this Complaint, Defendants failed to pay all wages owed to Plaintiffs, and the members of the collective

45

action described in paragraphs 38-41 above that Plaintiffs seek to represent pursuant to 29 U.S.C. § 216(b), at the rate required by 29 U.S.C. § 206(a) for all workweeks for the work described in paragraphs 114-121 above.

184. As a result of those acts or omissions by Defendants, in reckless disregard of the rights of Plaintiffs under 29 U.S.C. § 206(a), and in reckless disregard of the rights of each member of the collective action described in paragraphs 38-41, Plaintiffs and each member of that collective group have suffered damages in the form of unpaid wages and liquidated damages that may be recovered pursuant to 29 U.S.C. § 216(b).

B. SECOND CLAIM FOR RELIEF (NCWHA)

185. Plaintiffs adopt and reallege paragraphs one through 184 above as though fully set out herein.

186. As alleged and described above in this Complaint, Defendants failed to pay all wages owed to Plaintiffs, as required by and under N.C. Gen. Stat. § 95-25.6.

187. As a result of those above-described acts or omissions by Defendants, Plaintiffs have suffered damages in the form of unpaid wages and liquidated damages that may be recovered pursuant to N.C. Gen. Stat. §§ 95-25.6 and 95-25.22.

C. THIRD CLAIM FOR RELIEF (Clearance Order or work contract)

188.  Plaintiffs adopt and reallege paragraphs one through 187 above as though fully set out herein.

189.  As alleged and described above in this Complaint, Defendants violated their contractual duty to Plaintiffs to pay all wages owed to Plaintiffs when those wages were due to Plaintiffs, as required by the terms of the 2020 Berry Clearance Order described above in this Complaint, and further described in and by 20 C.F.R. §§ 655.122, 655.1304, and 655.1305, that each Plaintiff had with Defendants in 2020.

190.  As alleged and described above in paragraphs this Complaint, and in addition to the breach described in paragraph 189, Defendants breached numerous terms, conditions, and provisions of the 2020 Berry Clearance Order or work contract that each Plaintiff had with Defendants in 2020.

191.  As a result of those acts or omissions by Defendants, Defendants are liable to Plaintiffs in the form of unpaid wages or compensation and other compensatory damages that arose naturally and according to the usual course of things from Defendants' breaches and that may be recovered under the common law of contracts.

D.  <u>FOURTH CLAIM FOR RELIEF (FORCED LABOR UNDER THE TVPRA)</u>

192.  Plaintiffs adopt and reallege paragraphs one through 191 above as though fully set out herein.

47

193.   As alleged and described in paragraphs 135 to 146 and 159 to 167 above, Defendants, in violation of 18 U.S.C. § 1589(a) of the TVPRA, knowingly provided and/or obtained the labor or services of Plaintiffs by: (1) force, threats of force, physical restraint, and threats of physical restraint; (2) serious harm or threats of serious harm to Plaintiffs; (3) the abuse or threatened abuse of law or legal process; and/or (4) a scheme, plan, or pattern intended to cause Plaintiffs to believe that, if they did not perform such labor or services, Plaintiffs would suffer serious harm or physical restraint.

194.   Plaintiffs also bring claims against Defendants Hannah Forrest Farms and Ronnie Carter Farms for violations of 18 U.S.C. § 1589(b) of the TVPRA.

195.   In violation of 18 U.S.C. § 1589(b), and as alleged and described in paragraphs 3, 63, and 118 above, Defendants Hannah Forrest Farms and Ronnie Carter Farms knowingly benefitted, financially or by receiving something else of value, from participation in a venture which engaged in the providing or obtaining of labor or services by means described in 18 U.S.C. § 1589(a) and the preceding paragraph, knowing or in reckless disregard of the fact that the venture engaged in the providing or obtaining of labor or services by such prohibited means.

196.   As a result of those acts or omissions by Defendants in violation of 18 U.S.C. § 1589 of the TVPRA, Plaintiffs have

48

suffered damages and are entitled to recover damages, including punitive damages, pursuant to 18 U.S.C. § 1595(a).

E.     <u>FIFTH CLAIM FOR RELIEF (LABOR TRAFFICKING UNDER THE TVPRA)</u>

197.   Plaintiffs adopt and reallege paragraphs one through 196 above as though fully set out herein.

198.   As alleged and described above in this Complaint, Defendant Lopez Jr., in violation of 18 U.S.C. § 1590 of the TVPRA, knowingly recruited, transported, provided, and/or obtained by any means, Plaintiffs for labor or services in violation(s) of laws prohibiting peonage, slavery, involuntary servitude, and forced labor.

199.   Defendant Lopez Jr. intended to benefit from such trafficking scheme(s).

200.   As a result of Defendant Lopez Jr.'s acts or omissions in violation of 18 U.S.C. § 1590 of the TVPRA, Plaintiffs have suffered damages and are entitled to recover damages, including punitive damages, pursuant to 18 U.S.C. § 1595(a).

F.     <u>SIXTH CLAIM FOR RELIEF (SEX TRAFFICKING OF PLAINTIFF GOMEZ-HERNANDEZ UNDER THE TVPRA)</u>

201.   Plaintiffs adopt and reallege paragraphs one through 200 above as though fully set out herein.

202.   As alleged and described in paragraphs 147-158 above, Defendant Lopez Jr., in violation of 18 U.S.C. § 1591 of the TVPRA, knowingly recruited, transported, provided, and/or obtained, by

49

force, threats of force, fraud, and/or coercion, Plaintiff Gomez-Hernandez to cause Plaintiff Gomez-Hernandez to engage in a commercial sex act, as defined in 18 U.S.C. § 1591(e)(3).

203. Defendant Lopez Jr. intended to benefit, as defined in and by 18 U.S.C. § 1591(e)(3), from such trafficking scheme(s).

204. As a result of Defendant Lopez Jr.'s acts or omissions in violation of 18 U.S.C. § 1591 of the TVPRA, Plaintiff Gomez-Hernandez has suffered damages and is entitled to recover damages, including punitive damages, pursuant to 18 U.S.C. § 1595(a).


WHEREFORE, Plaintiffs pray that this Court:

(a) Find the Court has jurisdiction over Plaintiffs' claims;

(b) Grant a jury trial on all issues so triable;

(c) Certify this action as a collective action under 29 U.S.C. § 216(b) with respect to the class(es) defined in paragraphs 38-41 of this Complaint;

(d) Enter judgment against Defendants, jointly and severally, and in favor of Plaintiffs and each member of the collective action who has timely filed a Consent to Sue as required by 29 U.S.C. § 216(b) for back wages and liquidated damages under 29 U.S.C. § 216(b) in connection with Plaintiffs' First Claim for Relief in an amount equal to the total of the unpaid wages due each named Plaintiff and each member of the collective action

50

described in paragraphs 38-41 under 29 U.S.C. §§ 206(a) and 216(b), plus an equal and additional amount in liquidated damages pursuant to 29 U.S.C. § 216(b);

(e)     Enter judgment against Defendants, jointly and severally, and in favor of Plaintiffs for back wages and liquidated damages under N.C. Gen. Stat. §§ 95-25.22(a) and 95-25.22(a1), plus interest in the manner and at the rate prescribed by N.C. Gen. Stat. § 95-25.22(a), in connection with Plaintiffs' Second Claim for Relief in an amount equal to the total of the unpaid wages due each Plaintiff under N.C. Gen. Stat. §§ 95-25.6 and 95-25.22(a), plus an equal and additional amount in liquidated damages pursuant to N.C. Gen. Stat. § 95-25.22(a1), plus interest in the manner and at the rate prescribed by N.C. Gen. Stat. § 95-25.22(a);

(f)     Enter judgment against Defendants, jointly and severally, and in favor of Plaintiffs for compensatory damages in connection with Plaintiffs' Third Claim for Relief in an amount equal to the total amount of compensation due each Plaintiff in compensatory damages for each and every workweek and work season that Plaintiffs suffered an economic loss, lost wages, or other damages as a proximate result of Defendants' or a Defendant's failure to comply with either the express written terms of the 2020 Berry Clearance Order or contract that Plaintiffs had with Defendants in 2020 or the requirement(s) of any federal regulation governing employers' employment of H-2A workers through and under

51

the H-2A program that was incorporated into the same Clearance Order or contract between Plaintiffs and Defendants;

(g)  Enter judgment against Defendant Lopez Jr. and in favor of Plaintiffs for their actual and punitive damages under 18 U.S.C. § 1595(a) in connection with Plaintiffs' Fourth Claim for Relief;

(h)  Enter judgment against Defendants Hannah Forrest Farms and Ronnie Carter Farms and in favor of Plaintiffs for their actual and punitive damages under 18 U.S.C. § 1595(a) in connection with Plaintiffs' Fourth Claim for Relief relating to Defendants Hannah Forrest Farms' and Ronnie Carter Farms' financial or other benefits resulting from their participation in Defendant Lopez Jr.'s forced labor venture;

(i)  Enter judgment against Defendant Lopez Jr. and in favor of Plaintiffs for their actual and punitive damages under 18 U.S.C. § 1595(a) in connection with Plaintiffs' Fifth Claim for Relief;

(j)  Enter judgment against Defendant Lopez Jr. and in favor of Plaintiff Gomez-Hernandez for her actual and punitive damages under 18 U.S.C. 1595(a) in connection with Plaintiffs' Sixth Claim for Relief;

(k)  Issue a declaratory judgment pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57 that Defendants violated Plaintiffs' rights under the FLSA and other applicable law;

(l)  Award Plaintiffs the costs of this action against Defendants, jointly and severally;

52

(m)   Award Plaintiffs reasonable attorney fees against Defendants, jointly and severally, under N.C. Gen. Stat. § 95-25.22(d), 29 U.S.C. § 216(b), and 18 U.S.C. § 1595(a);

(n)   Award Plaintiffs prejudgment and post-judgment interest as allowed by law;

(o)   Enjoin Defendants from any further violation of laws alleged herein; and,

(p)   Award such other relief as this Court may deem just and proper in this action.

This the 8th day of May, 2022.

Respectfully submitted,

/s/ Aaron V. Jacobson
Aaron V. Jacobson
N.C. State Bar No. 44065
Email: AaronJ@legalaidnc.org

/s/ Caitlin A. Ryland
Caitlin A. Ryland
N.C. State Bar No. 38472
Email: CaitlinR@legalaidnc.org

Legal Aid of North Carolina
Farmworker Unit
224 South Dawson Street
Raleigh, NC 27601

53

Phone: (919) 856-2180

Attorneys for Plaintiffs

## INDEX OF EXHIBITS

Exhibit A.    Consent to Sue of Jose Cruz Martinez-Morales

Exhibit B.    Consent to Sue of Margarito De la Cruz-Nava

Exhibit C.    Consent to Sue of Cuauhtemoc Florencio-Gutierrez

Exhibit D.    Consent to Sue of Marisol Florencio-Gutierrez

Exhibit E.    Consent to Sue of Agustin Florencio-Sanchez

Exhibit F.    Consent to Sue of Jeidy Flores-Arriaga

Exhibit G.    Consent to Sue of Rosa Irma Gomez-Hernandez

Exhibit H.    Consent to Sue of Ivan Oswaldo Meza-Garcia

Exhibit I.    Consent to Sue of Feliciano Navarrete-Flores

Exhibit J.    Consent to Sue of Pedro Procopio-Diaz

Exhibit K.    Consent to Sue of Jose Romero-Patricio

Exhibit L.    Consent to Sue of Benin Betuel Vargas-Espiritu

Exhibit M.    Consent to Sue of Sergio Villalva-Gatica

Exhibit N.    2020 Berry Clearance Order

Exhibit O.    2020 Hannah Forrest Berry Contract

Exhibit P.    2020 Ronnie Carter Berry Contract